UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DASHI HURSEY,

        Plaintiff,                     Case No. 1:10-cv-1277

v.                                          Honorable Robert Holmes Bell

N. KLINESMITH et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e©. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all of the Defendants except Shirk, Vanortrich and Gagne.

**Discussion**

      I.        Factual allegations

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility but complains of events that occurred at the Ionia Maximum Correctional Facility (ICF). In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC) Director Patricia Caruso and the following ICF employees: Grievance Coordinator N. Klinesmith; Sergeant (unknown) Shroad; Warden Willie O. Smith; Deputy Warden (unknown) Norwood; Corrections Officers (unknown) Rincky, (unknown) King, (unknown) Mott, (unknown) Hair, (unknown) Kelly, (unknown) McNair, (unknown) Ryskey, B. Snyder, (unknown) Kotowicz, (unknown) Greenfield, (unknown) Vanortrich, (unknown) Bledsoe, (unknown) Shepard, (unknown) Jensen and (unknown) LaFonse; Administrative Assistant R. Groves; Assistant Resident Unit Supervisors (unknown) Vroman, (unknown) Smith, (unknown) Haynie, J. Wayne, (unknown) Kula, (unknown) Griffin and (unknown) Thomas; Resident Unit Managers P. Richardson, R. Embry, (unknown) Gilkey and (unknown) Bolton; Case Manager (unknown) Dykehouse; Lieutenants (unknown) Cannon, (unknown) Thomas and (unknown) Christenson; Sergeants (unknown) Davis, (unknown) Miles, J. Gagne, B. Scott, (unknown) Whenzel, (unknown) Moulter and M. Barber; Deputy Director D. Straub; Grievance Coordinator M. Breedlove; Captains (unknown) Hogel, (unknown) Sanchez and (unknown) Sanborn; and (unknown) Risk.

In his complaint, Plaintiff lists several violations of his First, Eighth and Fourteenth Amendment rights. In Count I, Plaintiff complains that Defendant Klinesmith denied him an appeal form for two grievances, and, therefore, he could not appeal the denial of those grievances to Steps

II and III. Plaintiff also complains that Defendants Klinesmith, Breedlove and Snyder gave several of his Step I grievances to the wrong individuals in violation of MDOC policy.

In Count II, Plaintiff claims that Defendant Shroad violated his due process rights when he changed the incident time on Plaintiff's misconduct ticket "so that it was within twenty-four hours" for timely review of the misconduct.[1] (Compl., Page ID#3, docket #1.) Plaintiff also claims that Shroad retaliated against him by changing the incident time of the misconduct ticket because Plaintiff filed two administrative complaints against Shroad.

In Count III, Plaintiff alleges that Defendant Caruso violated his equal protection rights when she did not act on Plaintiff's grievances. Apparently, Plaintiff's grievances informed Caruso that Defendants had wrongly removed Plaintiff's legal papers and personal property from his cell.

In Count IV, Plaintiff claims that Warden Smith violated his First and Eighth Amendment rights. On July 21, 2008, Plaintiff states that Warden Smith did not do anything to assist Plaintiff after Plaintiff informed Smith that he had been charged with a false misconduct. On September 1, 2008, Plaintiff claims that Warden Smith's staff refused to allow Plaintiff to go to the segregation yard in retaliation for filing a grievance against a corrections officer. Plaintiff alerted Warden Smith to the problem through the grievance process to no avail.

In Count V, Plaintiff claims that Defendants Risk, Rincky, King, Mott, Hair and Kelly retaliated against Plaintiff for filing an administrative complaint by refusing to allow Plaintiff to take

---

[1] According to MDOC Policy Directive 03.03.105, ¶ N (effective Nov. 1, 2010), a supervisory level employee shall conduct a review of the Misconduct Report with the prisoner within 24 hours after the report is written unless there is reasonable cause for the delay. The misconduct shall be dismissed by the hearing officer if the report is not reviewed within that time period and the hearing officer does not determine that there was reasonable cause for the delay.

a shower on September 3, 2008. Plaintiff states that Warden Smith and Deputy Warden Norwood knew of the retaliation by those individuals but did not do anything to stop the retaliation.

In Count VI, Plaintiff claims that Defendant Vroman retaliated against him by refusing to take his legal mail to the mail room on January 4, 2008 because Plaintiff had previously filed grievances against Vroman's staff.

In Count VII, Plaintiff complains that Defendants Shirk and Vanortrich violated his Eighth Amendment rights by assaulting Plaintiff after he spoke with an inspector about problems that he was having with segregation staff. When the inspector exited the segregation unit on June 3, 2009, Shirk placed Plaintiff in full restraints, punched Plaintiff in the face, pushed him and dragged him down the steps to his cell. After reaching Plaintiff's cell, Defendants Shirk and Vanortrich jumped on Plaintiff and slammed his face into a concrete wall. They also hit Plaintiff's head with their fists and elbows.

In Count VIII, Plaintiff claims that Defendant Gagne violated his Eighth Amendment rights by failing to protect Plaintiff from segregation staff abuse and retaliation. Plaintiff also alleges that Defendant Gagne assaulted Plaintiff on June 17, 2010.

In Count IX, Plaintiff states that Assistant Resident Unit Supervisor (ARUS) Smith refused to pick up Plaintiff's personal mail, grievances and correspondence on September 29, 2008, because Plaintiff filed grievances while in segregation. Plaintiff claims that ARUS Smith violated his rights under the Free Speech Clause and his right to be free from retaliation under the First Amendment.

In Count X, Plaintiff complains that Warden Smith and ARUSes Haynie and Vroman retaliated against Plaintiff for filing grievances by failing to protect Plaintiff from staff abuse that

occurred on December 31, 2007. On December 31, 2007, Plaintiff claims that correction officers working in the segregation unit stole Plaintiff's personal property while he was in the shower. Plaintiff informed Defendants Smith, Haynie and Vroman of the stolen property but they refused to do anything to help Plaintiff.

In Count XI, Plaintiff states that Defendants Groves, Wayne, Richardson, Embry, Gilkey, Kula, Griffin, Dykehouse, Cannon, Thomas, Christenson, Scott, King, Davis and Miles retaliated against him but he does not provide any details regarding the retaliation.

Plaintiff requests injunctive and declaratory relief as well as monetary damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Factual Allegations

Beyond naming them as Defendants, Plaintiff does not provide any allegations against the following Defendants in the body of his complaint: Groves, Wayne, Richardson, Embry, Gilkey, Kula, Griffin, Dykehouse, Cannon, Thomas, Christenson, Davis, Miles, Scott, McNair, Ryskey, Straub, Kotowicz, Greenfield, Bledsoe, Shepard, Jensen, LaFonse, Hogel, Sanchez, Sanborn, Whenzel, Moulter, Bolton and Barber. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff

failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Iqbal*, 129 S. Ct. at 1949 (The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .") Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Groves, Wayne, Richardson, Embry, Gilkey, Kula, Griffin, Dykehouse, Cannon, Thomas, Christenson, Davis, Miles, Scott, McNair, Ryskey, Straub, Kotowicz, Greenfield, Bledsoe, Shepard, Jensen, LaFonse, Hogel, Sanchez, Sanborn, Whenzel, Moulter, Bolton and Barber.

### B. Supervisory Liability and Denial of Grievances

Several Defendants are entitled to dismissal from Plaintiff's complaint because Plaintiff fails to allege that they actively engaged in unconstitutional conduct. In Count I, Plaintiff claims that Defendant Klinesmith denied Plaintiff an appeal form for two grievances. In Count III, Plaintiff alleges that Defendant Caruso failed to act on information in Plaintiff's grievances. In Count IV, Plaintiff complains that Warden Smith did not assist Plaintiff when Smith was informed

of a false misconduct against Plaintiff and when Smith learned that his staff refused to allow Plaintiff to go to the segregation yard on September 1, 2008. In Count V, Plaintiff contends that Warden Smith and Deputy Warden Norwood did not stop the alleged retaliation by several other Defendants on September 3, 2008. In Count X, Plaintiff claims that Warden Smith and ARUSes Haynie and Vroman failed to act after Plaintiff informed them that staff stole his personal property on December 31, 2007.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Klinesmith, Caruso, Warden Smith, Norwood, Haynie and Vroman engaged in any active unconstitutional behavior, and, thus, Plaintiff fails to state a claim against those Defendants.

To the extent that Plaintiff alleges that Defendant Klinesmith refused to give Plaintiff grievance appeal forms, he also fails to state a claim.  Plaintiff has no due process right to file a prison grievance.  The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant Klinesmith's conduct did not deprive him of due process.

In addition, even if Plaintiff had been improperly prevented from filing or pursuing a grievance, his right of access to the courts, *see, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977), to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances.  The exhaustion requirement for pursuing a § 1983 claim only mandates exhaustion of available administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  Because Plaintiff's only allegation against Defendant Klinesmith is that he failed to provide him with grievance appeal forms, the Court finds that Plaintiff fails to state a claim against Defendant Klinesmith.

### C. Due Process - Misconduct Ticket

In Count II, Plaintiff claims that Defendant Shroad violated his rights under the Due Process Clause when Shroad changed the incident time on Plaintiff's misconduct ticket so that it was within the requisite twenty-four hours for timely review of the misconduct. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates

to the creation and forfeiture of disciplinary credits[2] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 335 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011. In the absence of a demonstrated liberty interest, plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Plaintiff has not identified any significant deprivation arising from his misconduct conviction. Moreover, Plaintiff does not even allege that he was convicted of the misconduct. From Plaintiff's exhibits, it appears that the misconduct may have been dismissed by the hearing officer due to the

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

untimely review of the misconduct. (*See* MDOC Prisoner/Parolee Grievance Form, Page ID#34, docket #1-1.) Therefore, Plaintiff's due process claim fails against Defendant Shroad.

### D. First Amendment - Retaliation

Plaintiff alleges the following First Amendment retaliation claims for filing administrative complaints and grievances. In Count II, Plaintiff states that Defendant Shroad retaliated against him by changing the time of Plaintiff's misconduct ticket. In Count V, Plaintiff alleges that Defendants Risk, Rincky, King, Mott, Hair and Kelly retaliated against Plaintiff by refusing to allow Plaintiff to take a shower on September 3, 2008. In Count VI, Plaintiff contends that Defendant Vroman retaliated against Plaintiff by refusing to take Plaintiff's legal mail to the mail room. In Count IX, Plaintiff claims that ARUS Smith retaliated against Plaintiff by refusing to pick up Plaintiff's personal mail, grievances and correspondences on September 29, 2008.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance[3] is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)). The right to file a grievance, however, is protected only if the grievance is not frivolous. *Herron*, 203 F.3d at 415 (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). Assuming that Plaintiff's grievances are not frivolous, Plaintiff has satisfied the first prong for a First Amendment retaliation claim.

Plaintiff lists the following adverse actions by Defendants in his complaint: changing the incident time on a misconduct ticket, refusing to allow Plaintiff to take a shower on September 3, 2008, refusing to pick up Plaintiff's legal mail on January 4, 2008, and refusing to pick up Plaintiff's personal mail, grievances and correspondences on September 29, 2008. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis added).

In Count II, Plaintiff claims that Defendant Shroad did not review his misconduct within twenty-four hours in accordance with MDOC Policy Directive 03.03.105. (Compl., Page ID#3, docket #1.) Plaintiff, however, does not allege that the time change adversely affected him. In fact, it appears that the misconduct was ultimately dismissed by the hearing officer due to the untimely review of the misconduct. (*See* MDOC Prisoner/Parolee Grievance Form, Page ID#34,

---

[3] The Court assumes that Plaintiff's reference to filing administrative complaints is equivalent to filing a prison grievance.

docket #1-1.)  Therefore, the changing of the incident time on Plaintiff's misconduct was not sufficiently adverse to deter a reasonable person from engaging in protected conduct.

In Count V, Plaintiff complains that he was denied a shower on one occasion.  This court has previously found that the denial of a shower on one occasion, however, is not a sufficiently adverse action.  *See Williams v. Wise,* No. 2:09-cv-177, 2010 WL 160172, at *3 (W.D. Mich. Jan. 8, 2010) (the denial of a shower on one occasion was not sufficiently adverse for a First Amendment claim).  Accordingly, Plaintiff fails to state a First Amendment claim for the denial of a shower on one occasion.

In Counts VI and IX, Plaintiff alleges that Defendants Vroman and ARUS Smith refused to pick up Plaintiff's legal mail on January 4, 2008, and personal mail, grievances and correspondence on September 29, 2008, respectively.  The Sixth Circuit has held that the interference with a prisoner's mail on one occasion is insufficient to state a retaliation claim.  *See Mitchell v. Corr. Corp. of Am.,* 50 F. App'x 268, 270 (6th Cir. 2002) (the opening of a card to be sent to the prisoner's sister on one occasion did not state a First Amendment claim); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. May 24, 2010) (throwing out Plaintiff's legal mail on one occasion did not constitute an adverse action).  Defendant Vroman and ARUS Smith each refused to pick up Plaintiff's mail on one occasion.  Plaintiff therefore fails to state a First Amendment claim.

### E.     First Amendment - Access to the Courts

Plaintiff alleges that Defendants Vroman and ARUS Smith refused to pick up Plaintiff's legal mail and grievances in Counts VI and IX, respectively.  Because those claims

implicate Plaintiff's rights under the First Amendment, this Court will assume in accordance with *Haines*, 404 U.S. at 520, that Plaintiff intended to state an access-to-the-courts claim.

In *Bounds*, 430 U.S. 817, the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis*, 518 U.S. at 354. Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351. Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. Mar. 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. Mar. 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim.

*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Plaintiff has not alleged any injury to his direct appeal, a habeas corpus application or a civil rights complaint. Accordingly, he fails to state a First Amendment access-to-the-courts claim.

### F. First Amendment - Free Speech Clause

In Count IX, Plaintiff alleges that ARUS Smith violated his First Amendment right to freedom of speech when Smith refused to pick up his personal mail, grievances and correspondences. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. Plaintiff has not provided any allegations regarding how ARUS Smith violated his rights under the Free Speech Clause. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state a claim for a violation of his First Amendment rights under the Free Speech Clause.

### G. Eighth Amendment

At this stage of the proceedings, the Court finds that Plaintiff's Eighth Amendment claims against Defendants Shirk, Vanortrich and Gagne are sufficient to state a claim. Accordingly, the Court will order service of the Eighth Amendment claims against Defendants Shirk, Vanortrich and Gagne.

### H. State Law

In Count I, Plaintiff alleges that Defendants Klinesmith, Breedlove and Snyder gave his Step I grievance forms to the wrong persons in violation of MDOC policy. Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law against Defendants whose federal claims have been dismissed, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e© all Defendants except  Shirk, Vanortrich and Gagne.

An Order consistent with this Opinion will be entered.


Dated: June 28, 2011                              /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE